Case 19-1075, Linda Stermer v. Millicent Warren. Argument not to exceed 15 minutes per slide. Mr. Bang-Hartland, you may proceed to the appellant in red. Thank you. Your Honors, and may it please the Court, Linus Bang-Hartland, Assistant Attorney General for the State of Michigan, on behalf of the Respondent Warden, I'm respectfully requesting that this Court reverse the District Court's erroneous grant of habeas relief in this case. I'm reserving two minutes for my rebuttal. Thank you. I'm going to begin by talking briefly about the standard of review and noting the fact that ad pedeference does apply to this claim. This was adjudicated on the merits. I'm not going to get into too much depth because I believe that our brief lays out pretty clearly why Gilmette v. House, this Court's en banc decision to which all three members of this panel signed, holds that 6.508D orders are presumed to be merits adjudications in Michigan, and obviously the United States Supreme Court decision in Harrington v. Richter, which says that if a state court doesn't say it's denying relief on a procedural basis, then the presumption is that it's denying relief on a merits basis. That matters in this case even though the District Court said in an alternative holding that it would be applying ad pedeference to the ruling. We don't find any sign of that. This is similar to what the Ninth Circuit did in Harrington v. Richter, where it simply conducted a de novo review and at the end said, and we think the state court acted unreasonably in holding otherwise without explaining why, without giving any thought to what reasonable jurists might say in disagreement, what argument supported or could have supported the state court's denial of relief. So because the District Court only sort of recited this was contrary to or an unreasonable application of clearly established federal law without actually explaining why it was so, the District Court did effectively a de novo review when ad pedeference should have applied. So what, I mean, maybe that's right, but you still have to come to grips with what was said and whether that would satisfy ad pedeference or not. And, you know, calling the defendant a liar, you know, over and over, doesn't that get close to the line? I don't think it gets close to the line of prosecutorial misconduct. I think that the courts have held that prosecutors can strike harsh blows, but they can't strike foul ones. And what does harsh blows mean? I think that when the evidence suggests, as the prosecutor explained in closing argument, when the evidence supports that the defendant has made untrue statements on multiple occasions, I think that it is maybe harsh to call the defendant a liar. It is, but again, the case law says the prosecutor can't strike foul blows, but can strike harsh ones. You said based on the evidence. Other than Ms. Stermer lying about whether she had an affair, is there any other evidence that shows that she lied? There was evidence that there were the different stories she told about what happened at the fire, about whether she left the house through the front door, whether she left the house through the back door. Those stories couldn't have all been true. Does that mean that she's lying or just that she remembers things differently at different times? It could mean either one. I think it's fair for the prosecutor to say this means she's lying, and it's fair for Ms. Stermer's attorney to say this means it was a stressful situation. So the evidence that you would point to then, other than the affair incident, is that she lied as to whether she went through the front door or the back door. Is there any other evidence that she lied? I believe that you could draw an inference that she lied from the fact that she said that the towels that were found in the washing machine had a substance on them  Now, it is possible, again, you could draw different inferences from that, but I think it is fair to say you can draw an inference that she lied, because you can't get gasoline on a towel from bleeding a furnace. The furnace uses fuel oil, and the expert testified that the tests distinguish between fuel oil and gasoline. So there's no way that those towels got gasoline on them from bleeding the furnace. Now it is possible that she was mistaken, so I'm not saying this proves that she's a liar, but it is also possible, this is evidence that she lied, and it is fair to draw an inference that she lied from the fact that the towels absolutely had gasoline on them, and she had no explanation for how the towels got gasoline on them. She said that she filled up the blazer, right? She got $11.01 in gas from the gas station. The gas station attendant said she was putting it in at the back of the truck, not where the tank was. I mean, if she filled up her blazer with $11.00 worth of gas, then her blazer was 90% full when she got there. I think she filled up a gas can. And later, of course, that was tried to explain, well, yes, she was filling up a gas can, because they have gas cans and sometimes she has to fill up gas cans, but initially she said she filled up the blazer. So I think there are... But what does the case law say, just out of curiosity, as to what prosecutors are supposed to do in this setting? I mean, because obviously when people testify and they're a defendant and they're found guilty, it's arguable that they lied. Is the way to do this that you say either the person was mistaken negligently in terms of what they said, or they're a liar? Is that the way prosecutors are supposed to do this, to be within the rules of fair play? I think it's absolutely within the rules of fair play to say, based on this evidence that you've seen, here's why you should infer that this person tells lies and is a liar. The harm comes... But the prosecutor did, though. Yes, it is. I think the prosecutor... Well, not quite. He called her a diabolical, scheming, manipulative liar. But what does she do that reduces her to being a diabolical, scheming, manipulative liar? That's not just a liar. There's a connotation of evil resulting from that description. So what does she do to fit that description? Well, I think diabolical is... I mean, obviously evidence was presented that she murdered her husband. So I think that diabolical can be drawn from that. Again, the jury doesn't have to agree with that evidence. It did. But I think that's a fair... Again, a harsh description, but a fair one. The problem that the district court thought that it saw in this is that the prosecutor was implying that he had knowledge. This is a matter of saying to the jury, I know things that you don't. I know that she's a liar. And so based on what I know that you don't know, that's where the real danger comes in. And that's something that I believe the district court found happened in this case. And there's not any evidence of that. The only question here is whether this was a little bit too harsh of a categorization of the defendant, or whether it was harsh but not too harsh. And so whether... If that applies, what's your best case? I would... Across the line. I would point this court to the cases cited in the brief, especially Darden, which is one of the seminal cases on prosecutorial misconduct, where the harshness of the prosecutor's argument far exceeded the harshness that we see here. And every court, right, the Supreme Court in Darden said, this deserves the condemnation it has received from every court that has reviewed it. And it said, nevertheless, it didn't deny the defendant... What was that statement in Darden? There was statements that I think the defendant was an animal, that he wished that the defendant was sitting here with his head blown off or his face blown off the shotgun. I mean, it was just beyond the pale. I would also point this court to... This court's own recent decision, and it was post the briefing that it came out, it was last October in Richardson v. Palmer, a published decision. Judge Clay, you were on the panel in that case. And the prosecutor's comments, I mean, calling a defense witness a whore, commenting on the defendant's choice to consult with counsel, going on and on about all kinds of harsh... A lot of things, a few things that I stood here and agreed were over the line. And a lot of things that I didn't but this court held were over the line and inspired Judge Donald in her unanimous opinion to write sort of eight pages condemning the prosecutor for what she had done in that case. It denied habeas relief because it didn't deny the defendant a fair trial. It was harsh, it was over the line, far worse than what we have here. The problem with your side in Darden is that the court there noted that the prosecutor's argument did not manipulate or misstate the evidence and that much of the objectionable content was invited by or was responsive to the opening statement, the opening summation, I should say, of the defense. So the factual circumstances were different there. Sure. No two cases are the same. And, yes, there were those factors in Darden that we don't have here. But, of course, what we have here is also far less harsh than what we had in Darden. And I think the point is that what the district court really held was this was not a claim of prosecutorial misconduct for denigrating the defendant. I mean, although the district court definitely felt it was over the line, this was prosecutorial misconduct for basically commenting on the credibility based on knowledge that wasn't in evidence. And that's not what happened here. This is just about whether you're allowed to use harsh language, which we know you are allowed to, and whether sometimes harshness goes a little too far. And that is an argument that can be made. I don't believe it applies in this case, and especially with the strength of the evidence. It did not so infect the trial. In any way, all of that is subsidiary to the only question that matters in this case, which is whether a reasonable jurist could hold that these comments did not so infect the trial with unfairness as to make the conviction of denial of due process. There were a number of statements that the prosecutor made in the argument. One was that the prosecutor said the phones are in the van, according to GoHer. What was the evidence at trial that the phones were in the van? I don't know if the prosecutor was relying on Ms. Termer's daughter's statement that the reason – He says according to her. Her might be from what Ms. Termer told Kate Fox. Kate Fox testified that Ms. Termer sometimes kept a phone in the blazer. I don't know if that's what that was based on. I think that may have been a mistake by the prosecutor. I think that might have been a mistake. Because there is no evidence, or at least you have – the State has not pointed to any testimony that Stermer said the phones were in the van, correct? Right. In our brief – I mean, yes, exactly. I mean, Stermer did tell Kate Fox – There was testimony that Stermer told Kate Fox that she sometimes kept her secret phone in the blazer. I don't know if that's – The blazer is different from the van. Exactly, which is why I don't know if that's what the prosecutor was referring to. I think it is possible that the prosecutor just made a mistake on that point. I think that might have been prosecutorial error. I would not say it was – Just so I'm understanding this point, if the phone or phones aren't in cars, doesn't that lead to the possibility one or both of them are on her? Well, I think that the possibility would be they were in the house or on her. It's not clear at all. Or in the blazer, right? Or in the blazer. Because the testimony was she kept one in the blazer. Exactly. Possibly one of them was in the blazer, although her daughter said that it wasn't a secret phone. It was kept in the – well, she didn't say where it was kept, but it was used for hauling when they would haul things, the camper and whatnot. And so it is possible that that's what the prosecutor was referring to.  except to say that four lines out of a lengthy closing argument that on a point that was barely relevant, barely persuasive at all, if he inadvertently misstated some evidence in that, I would agree that was error. I would not agree that it so infected the trial with unfairness as to make her conviction a denial of due process. Another statement that the rebuttal by the prosecutor said was even by her own version, i.e. Linda Stermer's version, it's not an arson. What evidence was there at trial that Linda Stermer gave a version that it's not an arson? I'm not sure. I know that at some point she did say that she thought that possibly Todd Stermer had done this. I don't believe that she had any – according to her version, she didn't know how the fire started. And so she speculated that it was Todd Stermer that did it. I don't know if she also speculated it was an accident. But in your briefing, you don't point to any statement by Stermer that supports that claim, do you? No, but I don't think that – I was focused on what the district court found an error in. I may be mistaken. But I did see what the prosecutor said in the argument that is of concern. And you don't have any – you didn't in your briefing, and you are not now pointing to any evidence that Linda Stermer said it's not an arson, referring to the prior fires. Oh, the prior fires. That's what that line was from. Oh, I – no, I don't – no, I don't remember the district court flagging that as an error. And if the district court did, then I apologize that we didn't address it. I was focused on what I saw the district court addressing as error. And so I did not find examples that would support everything the prosecutor said in closing argument. I think that the fact that Stermer – that money was paid out for one of the fires indicates that it wasn't an arson, and I don't know if – But the statement was even by Linda Stermer's own version. Right. They're not an arson. And I don't know. I would be glad to, you know, obviously submit a supplemental brief if that's something that the court wants. If I find it. And if there wasn't, again, I would say it was potentially error. I do not believe that – I believe that a reasonable jurist could find that it did not deny Linda Stermer a fair trial. I'm out of time? Yes. I'd be glad to answer any questions, but seeing none, thank you, Your Honors. Good morning, Your Honors. Wolf Mueller on behalf of the petitioner Linda Stermer. Your Honors, I'd first like to address that threshold question of whether this is an Ed Pedefran's case or a de novo review case, and I want to direct the court's attention to what I think is the most on point case, which is this court's 2013 opinion in McClellan v. Rapoli. Judge Moore, you were on this bench, as you remember, in that case, and I want to quote because it's post-Gilmette, post-Harrington. It's published? It is unpublished, Your Honor, but I want to point out that it cites cases where it's case-specific inquiry and depends on any relevant factual findings made by the state courts in order to determine whether or not we have a case that's been decided on the merits. In this particular case, contrasting with Gilmette where there was a circuit court opinion, a trial court opinion that was on the merits specifically, in this particular case, the Livingston County District Court cited MCR 2.504B2, which states that any denial in this case has to be accompanied, must be accompanied by a concise statement of the reasons. The trial court in this case chose not to do that and relied on MCR 6.508D. It does remind me, I thought the same, was it the same Michigan rule that was invoked in this case that was invoked in Gilmette? In Gilmette, but that was for the appellate courts. As we know from Harrington and going back to Ilse v. Nunnemarker, you then have to look for the last reasoned opinion of the trial of the court in the state court. We don't have that here, just like we didn't have that in McClellan, and for those reasons, Your Honor, this cannot be a decision on the merits. The court chose not to follow MCR 6.504 when it decided not and chose not to do a concise statement of the facts. So in this case, we have a procedural default, and it's subject to then de novo review and opens up the evidentiary hearing. My understanding of the rule is that it can apply to rulings on the merits as well as procedural. It's ambiguous, Your Honor, and in this case as the court... I didn't think, just to be clear about my question, I didn't think the rule was ambiguous. I thought the rule allowed you to affirm on procedural or merits-based grounds. That's true. So if you invoke the rule, you're stuck with ambiguity as to what happened, right? But we don't have a finding from the trial court or any factual finding on the merits, and going back to Harrington, even if you allow presumption of that, it's still able to be rebutted. If we look at 6.508D, subpart 1, subpart 2, as Judge Tarnow noted, don't apply here. Subpart 3 is a procedural rule under Liberta v. Trippett. So we have a procedural rule, and in that case, again, we have a de novo review standard. We also open up to the evidentiary abuse of discretion that Judge Tarnow is able to hold an evidentiary hearing on the ineffective assistance claim with respect to the arson. I want to turn to that, if I may, and we can talk about the Ed Poddeference standard because under either standard, if we look at the ineffective assistance of counsel, starting with that, for not selecting an arson expert, we meet that under Strickland, no question. There is no fair-minded jurist that would decide that under the facts of this case that not selecting an expert to cross-examine or help with the defense, non-arson defense, falls within the Strickland guidelines. There is no fair-minded jurist that would decide that, and the reason is this. If we look at this court's opinion, I want to start with Ritchie v. Bradshaw from 2007. In that case, the defense attorney hired an expert, a guy named Dubois, who by all accounts wasn't much of an expert. In that case, Your Honor, the court stated, one, the scientific evidence of arson was fundamental to the state's case, as we had here, and even though Ritchie's counsel retained Dubois to review the state's arson evidence, where this case does not exemplify the most egregious type, wherein lawyers altogether fail to hire an expert. That's what we had here, and the reason why it's so important, and an expert... Tell me how there's prejudice in this case. What was the arson expert going to say? Any good lawyer would have gotten an arson expert to say what? Any good lawyer would have gotten an arson expert to counsel him so that there would be a Dalbert hearing. This state expert, Leroy... Best case scenario, what the arson expert is going to say at trial that helps your client. Go for it. None of the evidence here supports arson. It can only be undetermined, because under the scientific method and the scriptures of NFPA 921, you have to dig through the evidence to determine that. If you can't determine a cause, and arson is not a cause, under NFPA 921, you have an incendiary classification. Accident, undetermined, act of God, or incendiary. Here, the scientific evidence doesn't allow you to reach a decision, because the first floor is in the basement now, and we know that Leroy didn't examine the basement. So the best argument would be this is an undetermined fire. Did the arsonist say this was an accident? No. This is undetermined. You can't say what it is. Undetermined is a classification. When you haven't done the scientific testing and analysis... Was that the husband started the fire in an ill-fated attempt to collect insurance? I mean, wasn't that the theory at trial? The theory at trial was based on not understanding the fire science. So what the defense attorney did in this case was one, conceded that it was arson. So the mistake was to go down that road, and the better route was to say an expert would tell you we have no idea what happened. The expert would tell you there's an undetermined classification, therefore there is no crime. And in the alternative, we can show that the evidence, as Trenkle said at the evidentiary hearing, would suggest that the husband, the victim, set the fire himself. But the best evidence is that this is not a crime. Just remind me, forgive me for not knowing this, does the record have an affidavit that says exactly what this expert would have said? That's from the evidentiary hearing. But as Judge Tarnow said, you can determine this. So if it doesn't, but I mean, if you look at this, I mean it seems like the defense had a lot of problems in the case, but I can get the plausibility given his history of thinking this was a purported arson effort by him that went awry. Right? That's not trial strategy, Your Honor. Trial strategy is there is no crime. This is not an arson. That's the trial strategy that any minimally competent expert would have done. But he didn't know enough to cross-examine the expert on 921 or the scientific method. This would have been subject to a d'Alberti. And in your case of Tamrez versus Lincoln Electric, where we had welding rods associated with Parkinson's disease, where you said you have to bring more than a CV and the Ipsy Dixit of the expert to trial. There is no reliable methodology in this case. This case should have been dismissed on a d'Alberti hearing. There would have been no fire expert at the trial to say there's arson. That's where the mistake is. And it is not simply an error. It is egregious misconduct. What's your best case if AEDPA applies that not consulting an expert here would have crossed the AEDPA threshold? I think the best case. For ineffective assistance and an expert. For an expert is Ritchie, in this case, because this falls even worse than Ritchie. At least he hired an expert. But in this case, there is no expert. And as the court said, the most egregious type of ineffective assistance is where, in a case like this, and as in Harrington, criminal cases arise where the only reasonable defense strategy is to retain an expert. That didn't happen here. What was the defense theory at trial? Was it both that it was an accident and if it was arson that Todd? The main defense theory was, this is arson. We concede that. But Todd is the one who did it. Or, as a weak alternative, because it didn't even come up in terms of the evidence until the recross examination of Leroy, the state's expert, with respect to vapors. And he could have had gas on him. And vapors, if he sat next to the fireplace, could have caught him on fire. That was the only accidental evidence. But he didn't even go down the road of, this isn't an arson. This isn't a crime. Scientists will tell you, you can't determine what happened with the damage. Even if the state's arson expert concluded on cross, hypothetically, I'm making this up now, even if he concluded on cross, oh, it's undetermined really, that would not mean necessarily that there wasn't a crime committed. Correct? There could be other evidence. So, again, I'm speaking totally hypothetically. A defendant could say to an investigator, yeah, I set the fire. So even if the arson expert said the cause is undetermined, there could be evidence that would show it was arson by the defendant in a hypothetical case. Yes. And you're hypothetically, Your Honor, if the defendant admits to arson, you can have that. But in this case, we don't have any of that. We don't have any physical evidence. We don't have a confession. We don't have an eyewitness. What we have are two jailhouse snitch witnesses and an employee with mental issues. What's the explanation for all the gasoline? The gasoline, there was a gas can found outside, and there was gasoline on Mr. Stermer outside, remember, after the neighbor put clothing on him, which he had gotten from the back of his pickup truck. So that's an explanation, an explanation, but it doesn't go to the science of what is the origin of the fire and the cause of the fire. Once we get to an incendiary classification, then we can start talking about motivation. What's the potential theory? I mean, it's not spontaneous combustion. What happened? We can't What's the best? It's just going to be zero. There is no theory. It's too hard to tell under these circumstances. That is exactly because that's under NFPA 921. Sometimes you don't have an answer, and the problem with experts when they bring their credentials into court, and the Ipsy Dixit, as this court in U.S. v. Smithers said, is sometimes you run the risk that the jury will accept the expert's testimony as the irrefutable truth. That's what happens when you can buttress weak testimony. We had weak evidence here. Two jailhouse witnesses and a co-employee. We didn't have any strong evidence in this case, and that's the cases where the ineffective assistance sometimes doesn't meet Strickland when you have other strong evidence. Weak evidence? I find the case astonishing. I mean, the car going back and forth, randomly hitting the guy? You're calling that weak evidence? That's not evidence of arson. No, but in terms of what exactly happened in this case, and was there a motive to kill the husband? There is plenty of very serious evidence along those lines, right? Your Honor, with all due respect. Irrelevant because all we're talking about is arson? Yes, because the murder happens because of the arson, and if you don't have a crime of arson, you don't have a case. This case would have been dismissed on d'Albert or should have been, and that's the prejudice argument. Someone willing to run over their husband might not also be willing to set them on fire? That's a plausible inference. There was no evidence, Your Honor, that she willingly ran over her husband, period. So what was her explanation? She was in a panic and didn't see him. That's the explanation. It doesn't get to the arson, though, and the ineffective assistance of counsel focuses strictly, when you're talking about that, on hiring an arson expert, a fire investigation expert. That's where the ineffective assistance is. Was she convicted also of another type of murder, not just felony murder, and then that other type of murder was taken away because it would be double jeopardy to have two convictions for the same murder? For the same murder. The only conviction that stood is felony murder because of the arson. I see I've got two minutes left, Your Honor. She was charged with both premeditated murder and felony murder, and premeditated was dismissed as duplicative, as I understand it. Is that what happened? Correct. But she was convicted by the jury of that. She was convicted because she did not have a defense expert to help with cross-examination. I mean, cases are built on circumstantial evidence, and one really important piece of evidence is motive, and there's just plenty of evidence here that the jury could have accepted of motive to kill her husband. I don't know how that can be denied. Your Honor, we're talking about the supposed trial strategy of the defense attorney with respect to deciding whether or not to put on an arson defense of no arson or even calling an expert. But they didn't put on an expert of how easy or hard it is to drive over your husband with a car, okay? I mean, there's potentially an expert on everything, but that doesn't allow you to, after a jury goes through a long trial, and AEDPA applies, to say, I could find an expert that would have said, we don't know how the fire was started, or I could find an expert that would say, I don't know how she missed her husband. It could have happened.  It doesn't prove she wanted to kill her husband. It doesn't prove she wanted to set him on fire. But you're allowed to look at motive, you're allowed to look at circumstantial evidence, and there's a heck of a lot of it here. There is weak circumstantial evidence, Your Honor, in all due respect, and it still follows a determination that there was an arson. With my remaining time... Can you address the question, yes, of the prosecutorial misconduct? Thank you. I'd like to address that very quickly. I want to talk about the case of Gum v. Mitchell, which talks about prosecutorial misconduct from 2014. Your Honors were on that panel. The big thing in that case, I think, because the distinction they've made with other cases where there's been prosecutorial misconduct that's been denied on habeas, is that you have strong evidence otherwise. Here you had a weak case. In Cristini, you had a strong case. In Darden, they said the evidence of guilt was heavy. You don't have that here. And so, also, the failure to object to the prosecutorial misconduct falls far short of Strickland. But again, I don't think this is an ed-ba-deference case, I think, under de novo review because of the facts and circumstances of this case. I see I'm out of time, Your Honors. I'd be happy to answer any questions if you have any more. Thank you. Your Honors, I don't believe that the question of whether the state's expert could have been excluded is really before this court. That was something that was presented in the district court, and the district court did not grant habeas relief on the notion that if defense counsel had consulted an expert, he could have had the state's expert daubered it out. I don't think that that is correct. That was presented to the district court. The district court didn't grant habeas relief on those grounds. The grounds are that by consulting with an expert, you could present an opposing expert in opposing theories. And I think that is really the claim before this court. What we're concerned about here, though, with regard to the expert, is the standard being, isn't the standard whether there's a reasonable likelihood of a different outcome if the defendant had obtained an appropriate expert? Yes, that is the standard. And I think that even in the best-case scenario, from what my brother has described, you would have the state's expert saying this was arson, and then you would have the defense expert saying this might have been arson, and it might not have. We don't know. And I think that given that and given all the weight of all the other evidence, the evidence of motive and preparation and the statements that she made, I think that there is not a reasonable probability. I believe, though, that we more strongly win on the deficiency prong because this is a case similar. Now, I know we cite Harrington v. Richter a lot for its general propositions about epideference, but the specific claim in Harrington v. Richter was a claim of ineffective assistance for failure to consult with an expert, not failure to call one after consulting, but not consulting. And I think this is a very similar case to Richter. How can it be not ineffective to fail to consult with an expert in an arson case, given the numbers of cases that there are which are contesting the ability of experts, so-called experts in arson cases, to determine whether it was arson or not? Because the defense chose a strategy to say this was Todd Stermer, and that was the main strategy of defense. They also had the strategy that it was an accident. That was presented, and I agree with my brother, it was presented as sort of a weak fallback because counsel understood that it was not a strong argument and that it would have been a failing strategy to place all of his eggs in the basket of this was accidental. If counsel had had an expert who had given a basis for an accidental theory, then it wouldn't have been such a weak theory as you're describing. Perhaps, but my brother counsel has just told you that's not what his expert would have said. He said that his expert would have said it was undetermined. So it couldn't have even said accidental. Well, how does he know what the expert would have said? Not only did they not have an expert, they never consulted with an expert. I don't know, but the point is he's referring to the evidentiary hearing. Can you refer to that if you say that we shouldn't have had an evidentiary hearing in the district court? I'm not referring to the evidentiary hearing. I don't think we should have had one in the district court. I think we win either way. So then we don't know what an expert would have said. Correct. He hasn't carried his burden of showing what an expert would have said. I thought the way this worked is you always have to show prejudice. So forget the evidentiary hearing. If there had been no evidentiary hearing, you would have had to show in your habeas application that here's what an expert would have said. Here's the affidavit that explains it. And they didn't consider an expert, and it's prejudicial because here's the conclusion. I take him to be saying the way they're doing that is through the person they actually used at the evidentiary hearing. But it would be the same either way. They have to do it or else they can't get relief. I agree. They have to do it. And I don't think that they have done it in this case. I agree. I think that on either the prejudice. Can you walk through what Judge Tarnow was – what his path was with this Michigan rule to get around Gwimet? I don't understand what he was thinking, and I'm just trying to figure out if I'm missing something on this. I think Judge Tarnow was ignoring – well, I don't think. Judge Tarnow was ignoring the first – the opening sort of part of 6.508D. So 6.508D says that the – and I don't have the text of the rule in front of me, and I apologize. But 6.508D says that the defendant bears the burden of establishing entitlement to relief, and then it goes into 1, 2, and 3. And I forget what 1 is. 2 is you can't get relief on a claim that you've already raised and not gotten. So that's like a res judicata. And then 3 is if you could have raised it on direct appeal but you didn't, you can't get relief unless you show good cause and actual prejudice. So I think what Judge Tarnow was doing is saying, well, this doesn't fall under 1, whatever that is. And again, I don't remember. It doesn't fall under 2, and I agree he's right. And it doesn't fall under 3 – well, no, he said by elimination it must fall under 3, even though the state court didn't cite 3. So there was no clear statement by the state court that this was a procedural default based on failure to raise these claims on direct appeal, which is very common. The state court could have done that in this case. It didn't do it. Instead, a minimal explanation, right, it says that the court examined the motion together with all files, records, transcripts, and correspondence. Plainly appears to this court that the material reviewed, along with the motions, do not entitle the defendant to relief. That is a merits adjudication. It is – Richter makes clear, Williams makes clear. Well, it's ambiguous, but its ambiguity leads to the conclusion it's a merits determination. Yes. I think that – Because it could be a procedural part under D3. It could be. The court could have relied on D3, but this explanation is not a D3 explanation. But it could be. It could be. Perhaps it could be. I don't think that – The punchline is does not merit relief. What's the punchline? It plainly appears to this court that the material reviewed, along with the motions, do not entitle the defendant to relief, and therefore the court is denying the motions without any further reason. You could not be entitled to relief because of procedural default or on merits. Right. So even if it could be a procedural default, the presumption, which has not been overcome, is that it is a merits adjudication. Let me ask you one thing about the proceedings in front of Judge Tano with respect to the expert. Didn't Judge Tano get into that issue – there might be a separate issue as to whether Judge Tano should have conducted a hearing or not, or an evidentiary hearing. But wasn't there an affidavit regarding the issue the expert witness submitted before Judge Tano or a testimony or affidavit about that issue? I believe that Mr. Trenkle, that he submitted an affidavit from his expert before the hearing. So I think it was – Can you refresh my recollection as to what that affidavit stated? I think that it said that it either was an accident or that it was arson committed by Todd Stermer, which I think if you tell that to a jury, your credibility immediately goes downhill because you're presenting two incompatible statements and saying, I'm an expert and I know that one of these things is true. Well, that would depend upon the explanation provided by the expert and the basis for offering the alternative theories, would it not? It might, but I think that it is reasonable for an attorney to decide that putting two contradictory theories in front of a jury is going to be inherently weaker, whatever the explanations are, than putting all or most of your stock into the single most likely theory. Remember, this was Todd Stermer's third house fire. In order to advance the claim this was an accident, defense counsel would have to say, don't worry about that this was his third house fire. That was a coincidence. Instead, he was able to argue the jury doctrine of chances. He couldn't have done that if he had advanced the accident. And again, I refer this Court to Richter and the notion that – You've answered my question. Okay. Was there evidence of gasoline in the house? There were the towels in the washing machine. Most of the house was – the living room area was completely burned up. So there was no gasoline found in it. Gasoline was found on Todd Stermer. The clothes that came from Matheny were tested and found to have no gasoline on them. So I think the idea that the gasoline came from Matheny's clothes is a non-starter. But the gasoline was on Todd Stermer's sweatpants. Yes. I'm curious about a factual question. Sorry to bother you. But in this Judge Clark opinion from the state trial court on post-conviction, there's a statement that the trial court appointed counsel for the defendant. And the court had given the defendant's counsel more than 56 days to amend or supplement the documents, and none has been received. So am I correct in understanding Judge Clark's order of February 28, 2014, that the defense counsel that was appointed to Ms. Stermer in the state post-conviction did not do anything at all? Is that what that – am I reading that correctly? No, I don't think – What did the defense counsel do then? I – So it's page 2 of Judge Clark's judgment and says, the court has given defendant's counsel more than 56 days to amend or supplement the documents as filed in this matter, and none has been received. Was there a brief filed? Was there anything done? I would – and I'm not sure I could look at the record, but I don't know. I believe that you're correct, that counsel didn't do anything. I think that this was a pro se motion for relief from a judgment that was filed. Counsel was appointed, but counsel didn't do anything to follow up on the pro – what was already done pro se. What was counsel doing? I don't know. Yeah. There is no – I realize that you're not on that side, but I thought as an officer of the court you could – I actually don't know because it hasn't been an issue that's been raised in this case, and I would also mention to the court that there is no such thing as ineffective assistance of counsel on post-conviction review. Thank you. Thank you, Your Honors, and we respectfully request reversal. Thank you both for your argument. The case will be submitted. And would the clerk call the next case, please?